# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 15-124V
(to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *

CHRISTINE DELOZIER,            *
*parent and next friend of L.T., a minor*,    *

                 *

        Petitioner,         *

                 *

     v.                *

                 *

SECRETARY OF HEALTH AND    *
HUMAN SERVICES,            *

                 *

        Respondent.       *

                 *

* * * * * * * * * * * * * * * * * * * * * * * * *

Chief Special Master Corcoran

Filed:  August 11, 2020

Alopecia Areata; Autoimmune
Condition; Pain and Suffering;
Damages

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

*Jennifer L. Reynaud*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DAMAGES DECISION[1]

On February 9, 2015, Christine DeLozier,[2] as parent and next friend of L.T., a minor, filed a petition seeking compensation under the National Vaccine and Injury Compensation Program (the "Vaccine Program").[3] (ECF No. 1) ("Petition"). Petitioner alleged that L.T. suffered from alopecia areata ("AA") attributable to a hepatitis B vaccine ("HBV") L.T. received on November 6, 2012. A hearing was held in this matter on February 4, 2019, and I determined that Petitioner

---

[1] This Decision shall be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id.*

[2] Although the Petition was originally filed under the name "Christine Torres," Petitioner has since changed her last name to DeLozier, and therefore the case caption has been amended. (ECF No. 58).

[3] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

had established an entitlement to a damages award based on her success in preponderantly demonstrating that the HBV vaccine triggered a single instance of AA. Ruling on Entitlement, dated December 10, 2019 (ECF No. 66) (the "Ruling").

I subsequently ordered the parties to attempt to resolve damages in this matter, and although they agree that the sole item of damages to be awarded is pain and suffering, they dispute the quantum of that component. Now, based on review of the filed materials and briefs, and for the reasons set forth below, I award **$50,000.00** in actual pain and suffering in this case.

<u>Procedural History</u>

As noted, this case was filed over five years ago, and went to hearing only after the parties were unable to settle. At hearing, it was established that L.T. was three years old (and thus a toddler) when she received the HBV vaccine in November 2012, and that she began experiencing hair loss within a week of vaccination. Ruling at 3. Although the process of treating the hair loss extended into the next year, by August 2014 (almost two years after L.T. received HBV) the medical records ceased to indicate that it was still a concern. *Id.* at 5. L.T. then experienced a recurrence of AA about a year later, in August 2015 (when she was six) that required follow-up treatment. *Id.* at 5–6. However, subsequent records fail to show the problem persisted in later years—and although at one point in the efforts to resolve damages Petitioner maintained that one component of damages would include the cost of ongoing treatment, that need was never substantiated. *Id.* at 6.

My December 2019 Ruling was favorable to Petitioner—but only with respect to the *initial* occurrence of AA in November 2012 that appears to have thereafter required approximately two years to treat before resolving. Ruling at 2, 20–24. Petitioner had only preponderantly established that the HBV vaccine could cause (and in L.T.'s case, had caused) *a single episode* of AA—not initiated a chronic process that would likely recur. *Id.* at 23–24. The evidence and expert testimony (which acknowledged that AA was believed to have a genetic origin) did not support the conclusion that a one-time triggering of AA, due to vaccine or otherwise, meant that the same initial trigger was also responsible in part for all subsequent occurrences. As a result, the HBV vaccine L.T. received in 2012 could not be blamed for any subsequent occurrences L.T. experienced (or may yet experience). *Id.*

Because of my finding, Petitioner could only recover damages associated with the first documented instance of AA that had occurred within a week of receipt of the vaccine—the cost of treatment relating to this single instance, plus pain and suffering attributable to it. I issued an Order requiring the parties to attempt to reach agreement on damages (and specifically tasking Petitioner with calculating the sum to be requested). Damages Order, dated Dec. 11, 2019 (ECF No. 67).

2

Thereafter, the parties attempted to resolve the issue of damages, but were unsuccessful in so doing. It does appear, however, that their discussions somewhat succeeded in narrowing the relevant categories of damages. Thus, in an initial status report responding to my Damages Order, Petitioner represented that the damages components to be requested would include future treatment costs associated with the first instance of AA,[4] plus pain and suffering and "minor out-of-pocket costs." Joint Status Report, dated Feb. 10, 2020 (ECF No. 69) at 1. However, Petitioner's subsequently-filed Brief on Damages reported that "the only award to L.T. will be for pain and suffering." Petitioner's Brief, dated May 22, 2020 (ECF No. 72) ("Brief") at 1.[5]

Petitioner's Brief offers no other substantiation for the claimed damages categories (and in fact did not even request a *specific amount* to be awarded for pain and suffering). It also does not cite to findings from the Ruling, or other record evidence that would support any particular damages calculation. At most, it refers to an earlier-filed declaration from Ms. DeLozier. Declaration, dated Mar. 3, 2020 (ECF No. 71-1). In that declaration, Petitioner recounts the aftermath of L.T.'s vaccination and associated hair loss, maintaining that L.T.'s head had to be shaved, and that her appearance caused other children to make fun of her. Declaration at ¶4. Ms. DeLozier stresses the psychologic impact of the hair loss on her daughter, adding that regrowth was subsequently thinner. *Id.* at ¶6. Ms. DeLozier's declaration also mentions itchy eczema patches that caused L.T. discomfort—although (as my Ruling indicates) L.T. had experienced eczema *before* vaccination (Ruling at 2), and independent of her vaccine-triggered AA (although it is an associated condition).

Respondent filed a brief setting forth his position on damages on June 22, 2020. ECF No. 73 ("Opp."). Respondent argues therein that the damages to be awarded should be limited to $15,000.00 in compensation for past pain and suffering. Opp. at 1. Because L.T.'s hair loss experience was generally limited, resolving "with minimal treatment over a year or two" before she was in kindergarten, Respondent contends that a nominal pain and suffering award is all that is justified under the facts of the case. *Id.* at 4. Respondent otherwise highlights the fact that Petitioner requested no other damages components of the kind often sought in Program cases (e.g., lost past or future wages, unreimbursable expenses, etc.)

---

[4] In reaction, I reminded Petitioner of my Ruling's determination—that HBV had *not* been shown to be responsible for any "chronic" subsequent hair loss/AA incidents—meaning that future care costs were only recoverable if associated with the *first* instance of hair loss that I had found was vaccine-caused. *See* Scheduling Order, dated Feb. 11, 2020 (ECF No. 70) at 1–2. I also note that Petitioner's first status report made no effort to *calculate* the damages she expected to demand, and only identified categories of damages to be requested.

[5] Incongruously, the Brief *also* again claims that Petitioner incurred "some out of pocket expenses," and maintains they were still in the process of being compiled (Brief at 2)—despite the fact that I had asked Petitioner to perform this task almost six months before. To date, Petitioner has never substantiated them, despite a full and fair opportunity to do so, and her most recently-filed Reply drops any request whatsoever for this category of damages.

On July 17, 2020, Petitioner filed a reply in support of her damages request. ECF No. 74 ("Reply"). Now (and for the first time since the Entitlement Ruling), Petitioner made clear that she seeks a pain and suffering award of $250,000.00—the maximum available under the Act—for all emotional distress/pain and suffering experienced by L.T. Reply at 3. In support, Petitioner referred again to her March 2020 declaration, but referenced no other evidence or case law that would substantiate this demand. *Id.* The matter is now ripe for resolution.

## ANALYSIS

### I.    Relevant Law on Calculation of Pain and Suffering Awards

The sole damages issue before me is the amount of pain and suffering to be awarded in this case—as both sides agree *some* amount is appropriate. There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation").

Many Vaccine Program cases discuss calculation of two subcategories of pain and suffering awards—past (or "actual") and projected—and then add them together, to come up with the total sum (with the future component discounted to net present value). *See, e.g.*, *Collado v. Secretary of Health & Hum. Services*, No. 17-0225V, 2018 WL 3433352, at *6–8 (Fed. Cl. Spec. Mstr. June 6, 2018). Here, I do not find the total sum to be awarded needs to be so separately calculated. Petitioner has not requested a bifurcated award, based on prior suffering plus anticipated future experience—and more importantly, Petitioner *has not established* entitlement to a future award, given that her single, vaccine-caused AA occurrence has not been shown to have resulted in life-long sequelae or likely future emotional harm. Thus, an award for actual *past* pain and suffering is all that is warranted in this case.

The Vaccine Act caps the awardable amount of total pain and suffering damages at $250,000.00. Section 15(a)(4). One question raised by the parties' briefs is how to calculate a pain and suffering award in light of this cap. A persuasive Court of Federal Claims decision issued within the last seven years suggests that special masters should calculate the *total* pain and suffering award appropriate (whatever it is) before applying the cap, rather than treating the $250,000.00 amount as the top of a "range" of potential awards, with cases falling within a spectrum based on comparable severity. *Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579, 589–90 (2013). Respondent has argued (in this case[6] as well as others) that the latter approach

---

[6] *See* Opp. at 3–4.

4

was regularly applied before *Graves* was decided and is preferable, and otherwise maintains that the cap should not be treated as a default (based on the assumption that many petitioners could demonstrate a greater degree of pain and suffering). However, special masters have accepted *Graves*'s methodology since the case's issuance. *See, e.g., Bruegging v. Sec'y of Health & Hum. Servs.*, No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019); *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019).

*Graves* is not controlling precedent in this case, no matter how well-reasoned. In addition, the Vaccine Act *itself* only states that pain and suffering awards cannot "exceed" the cap and does not provide a specific means of its application. Section 15(a)(4). Certainly, it logically cannot be the case (and cannot have been the intent of Congress in creating the Program) that *all* Program cases in which a pain and suffering award is merited should receive $250,000.00. Although a persuasive argument can be made that the passage of time has rendered the cap an artificial limitation on total recoverable pain and suffering, it still reflects Congress's judgment that there should be an outer bound for pain and suffering awards—and implicit to that is the reasonable likelihood that many cases will warrant some lower figure. Nevertheless, I have in prior cases followed *Graves*, and I will apply it herein as well—although I do so mindful of the need to consider the overall strength of Petitioner's showing herein. What total amount has in this case been demonstrated to be appropriate?

In calculating pain and suffering awards, Court of Federal Claims judges and special masters have frequently considered three primary factors: (a) severity of the injury, (b) awareness of the injury, and (c) duration of the suffering. *Collado,* 2018 WL 343352, at *6. Awareness is often deemed a function of whether the injured party was mentally competent (*see, e.g., Meyers v. Sec'y of Health & Hum. Servs.*, No. 18-0909V, 2020 WL 3755335, at *3 (Fed. Cl. Spec. Mstr. June 5, 2020))—suggesting that injuries experienced by an infant or very young child, whose mental cognition was not yet fully developed, might not meet these criteria.[7]

Duration and severity, by contrast, relate to the amount of pain or loss of normal function imposed by the injury, and the length and invasiveness of treatments required for it. As a number of decisions on the subject reached in cases involving shoulder injuries related to vaccine administration ("SIRVA") reveal, the amount to be awarded should take into account not only how painful (both in terms of immediacy and duration) the injury has proven, but the degree of treatment it required—measured in terms of things like whether surgical intervention was needed (and if so, how invasive it was), and how many treater visits were necessary. *See, e.g., Smallwood*

---

[7] This is not to say that awareness in young children can never be established, thus putting out of reach a larger award in such cases. *See generally McAllister v. Sec'y of Health & Hum. Servs.*, 91-1037V, 1993 WL 777030 (Fed. Cl. Spec. Mstr. Mar. 26, 1993) (awarding statutory cap of $250,000.00 to a child who was injured at the age of three months old), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995).

*v. Sec'y of Health & Hum. Servs.*, No. 18-029V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

## II.    Calculation of Petitioner's Actual Pain and Suffering Award

Although the parties agree that a pain and suffering award is merited in this case, I also find that the record amply supports one as well. The only question is the magnitude of that award.

Consideration of the three criteria set forth in *Collado* and many other decisions helps to define what these circumstances suggest would be a just and fair award. Unquestionably, L.T. was old enough to perceive her hair loss and how it made her appear. I also find that Petitioner's declaration substantiates the kinds of anguish and concern that would accompany loss of hair that could be observed publicly—especially by other children.[8] At the same time, however, I find that the duration of L.T.'s hair loss and subsequent treatment was not unusually long, nor has the severity of the injury and associated treatment been shown to be especially high. L.T.'s overall hair loss attributable to a single instance of AA was not permanent, her treatment mostly appears to have involved topical creams, and Petitioner did not establish that this initial loss has persisted. Ruling at 3–6.

Petitioner argues that her total pain and suffering exceeds the statutory cap, and therefore requests $250,000.00 in total, without differentiating between past and present suffering. But a sum of this magnitude (let alone one exceeding it) has hardly been established by Petitioner's limited showing. Indeed—Petitioner did not even *request* a $250,000.00 award until her Reply, and she offers no comparable cases or other evidence beyond her own declaration to support the figure. Respondent proposes no more than the far more modest sum of $15,000.00. Like Petitioner, however, Respondent has not identified any basis, such as in past decisions, to justify this amount.

While few, if any, cases alleging alopecia have been resolved through reasoned decision, a number of settled cases give some insight into what might be the fair contours of an award in this case.[9] Cases in which the injured party suffered a more severe form of alopecia, such as alopecia totalis and alopecia universalis, resulting in complete and persistent hair loss, have resulted in higher total awards. *See, e.g.*, *Angell v. Sec'y of Health & Hum. Servs.*, No. 14-914V,

---

[8] Respondent argues that Petitioner's contention that L.T.'s head had to be shaved is not substantiated by the Record. Opp. at 4 n.2. Petitioner did submit photographs of L.T. in which several bald patches are noticeable, and her remaining hair had been shaved. Ex. 8, filed May 21, 2015 (ECF No. 13). These photos, however, appear to have been taken in May 2015 during a separate flare of AA unrelated to the vaccination she received in 2012. Thus, I find Petitioner was unable to substantiate the claim that L.T.'s head had to be shaved during the *initial* flare for which I have found entitlement, but this point does not substantially undercut the reasoning behind the calculation of the award in this case.

[9] While decisions awarding damages via stipulation or settlement serve as useful comparisons under the circumstances, they do not provide a reasoned analysis as to how much of the total award amount is specific to past and future pain and suffering, or how such an amount was deemed appropriate. Under the circumstances, however, they are the next-best-available evidence for consideration.

2016 WL 5819224 (Fed. Cl. Spec. Mstr. Sept. 6, 2016) (awarding a lump sum award of $225,000 to a minor petitioner who suffered from persistent alopecia totalis); *Desiderio v. Sec'y of Health & Hum. Servs.*, No. 11-444V, 2012 WL 1392316 (Fed. Cl. Spec. Mstr. Mar. 19, 2012) (awarding a lump sum of $95,000 to an adult petitioner who suffered alopecia universalis after receiving several vaccines). By contrast, cases alleging other subtypes of alopecia, including AA, have resulted in smaller total sums. *See Trezza v. Sec'y of Health & Hum. Servs.*, No. 13-231V, 2014 WL 6845794 (Fed. Cl. Spec. Mstr. Nov. 5, 2014) (awarding a lump sum of $50,000 for an unspecified subtype of alopecia experienced by a minor); *Andrews-Turner v. Sec'y of Health & Hum. Servs.*, No. 11-506V, 2012 WL 6788395 (Fed. Cl. Spec. Mstr. Dec. 10, 2012) (awarding a lump sum of $115,000 for AA experienced by a minor and alleged to have lasted for more than four years following receipt of the MMR vaccine). Yet high or low, in *none* of these cases can it be discerned from the settlement what component of the total award reflected pain and suffering— and it is likely that cases involving more severe kinds of alopecia included larger future and past treatment components.

L.T. suffered from the less severe, AA-subtype of alopecia, and her symptoms persisted for approximately two years. Although she required minimal treatment of a non-invasive nature, she still suffered from the stigma and embarrassment of hair loss, at an age where she would likely comprehend the experience. I thus find that an award of **$50,000** is fair, in light of the circumstances of this case and best comparables available. This sum fairly captures the temporally-limited severity of L.T.'s suffering, and generously compensates her for the experience of her AA, which thankfully happened when she was quite young (thus limiting somewhat the trauma that a teenager (subject to peer pressure) or older adult might experience. The award I make is more than three times what Respondent offers, underscoring my view that a somewhat more substantial award is warranted, even if Petitioner's cap-hitting request has not been persuasively established.

I note that this award exceeds what has been agreed to or ordered in cases involving somewhat-comparable one-time, non-catastrophic vaccine injuries that have resolved favorably, with mild-to-moderate sequelae and limited to no pain, but some evidence of stigma or embarrassment due to the outward/visual nature of the injury. *See, e.g.*, *Olschansky v. Sec'y of Health & Hum. Servs.*, No. 17-1096V, 2019 WL 7560417 (Fed. Cl. Spec. Mstr. Oct. 21, 2019) (joint stipulation was reasonable for $38,696.72 representing *all* damages available for compensation under 42. U.S.C. § 300aa-15(a) for an adult petitioner suffering from vitiligo); *Williams v. Sec'y of Health & Hum. Servs.*, No. 15-1224V, 2019 WL 994570 (Fed. Cl. Spec. Mstr. Jan. 29, 2019) (parties settled for $12,500.00 in case where child was suffering from eczema).

In addition, cases involving more obviously severe, if durationally-limited, injuries to young children, such as intussusception (an acute intestinal blockage typically requiring surgical intervention), have *also* resulted in somewhat lower pain and suffering awards. *See, e.g.*, *Reed on behalf of M.C. v. Sec'y of Health & Hum. Servs.*, No. 14-653V, 2015 WL 779137 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) (stipulating to $35,000.00 in pain and suffering in intussusception case); *E.J.N. by Noon v. Sec'y of Health & Hum. Servs.*, No. 13-1029V, 2014 WL 1614526 (Fed. Cl. Spec. Mstr.

Apr. 1, 2014) (same amount proffered in intussusception case). Only where the intussusception was unusually severe, requiring more invasive treatment and likely to produce uncommon future sequelae, has a higher amount been awarded. *Neiman v. Sec'y of Health & Hum. Servs.,* No. 15-631V, 2016 WL 6459618, at *7 (Fed. Cl. Spec. Mstr. Aug. 22, 2016) (awarding $144,000.00 for past pain and suffering, plus future pain and suffering in the amount of $1,000.00 per year for life, where surgical intervention required removal of portion of child's bowel that would result in lifetime of GI problems).

All of the above underscores the justness of a $50,000.00 actual pain and suffering award in this case. L.T.'s pain and suffering is mostly a function of the distress she likely experienced from her temporary hair loss—some of which (and in particular her subsequent AA bouts that did not occur after vaccination) is attributable to a genetic predisposition unrelated to vaccination, and not shown to have been exacerbated or exposed by vaccination. As distressing as her injury may have been, it was not life-threatening or physically painful. The amount to be awarded makes L.T. whole for the loss she experienced, and requires no other compensatory elements (for example, for past or future treatment costs)[10]—another indirect factor that might have counseled for a higher award.[11]

---

[10] Although I did not find that any of L.T.'s subsequent AA occurrences were vaccine-caused—and thus do not include any costs associated with them in my award—I invited Petitioner to substantiate future costs associated with her one-time AA occurrence. Scheduling Order, dated Feb. 11, 2020 (ECF No. 70) at 3 n.3. But Petitioner has offered no evidence to this effect, nor did she attempt to substantiate these future treatment costs, despite repeated opportunities to do so.

[11] I am opting to resolve damages in this case without hearing additional testimony. The Vaccine Act and Rules not only contemplate but encourage special masters to decide issues raised by petitions on the papers where (in the exercise of their discretion) they conclude that doing so will properly and fairly resolve the case. Section 12(d)(2)(D); Vaccine Rule 8(d). The decision to rule on the record in lieu of hearing has been affirmed on appeal. *See Kreizenbeck v. Sec'y of Health & Hum. Servs.*, No. 08-209V, slip op. at 8 (Fed. Cir. Jan. 6, 2020); *Hooker v. Sec'y of Health & Hum. Servs.*, No. 02-472V, 2016 WL 3456435, at *21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided the matter on the papers in lieu of hearing, and the decision to do so was upheld on appeal). I am simply not required to hold a hearing in every matter, no matter the preferences of the parties. *Hovey v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 397, 402–03 (1997) (special master acted within his discretion in denying evidentiary hearing); *Burns*, 3 F.3d at 417; *Murphy* 23 Cl. Ct. at 730–31.

Here, there was no need to allow further witness testimony to decide the amount of pain and suffering to be awarded. At the February 2019 entitlement hearing, I had the opportunity to listen to Petitioner—and I have taken into account her testimony about the scope of L.T.'s injury and the suffering it caused in reaching the current calculation. In addition, Petitioner's submissions on damages establish no grounds to hear again from her, or from any other witness. Indeed, beyond her recent two-page declaration, she has provided little to no additional evidence bearing on damages, and certainly nothing else that would justify the requested $250,000.00 award.

**CONCLUSION**

In light of the above, I award **$50,000.00** in damages for actual pain and suffering, in the form of a check payable to Petitioner. This amount represents compensation for all items of damages that would be available under Section 15(a).

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk **SHALL ENTER JUDGMENT** in accordance with this decision.[12]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[12] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.