# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-124V
(to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CHRISTINE DELOZIER,
*parent and next friend of L.T., a minor,*

         Petitioner,

         v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

         Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Chief Special Master Corcoran

Filed: February 22, 2021

**ORDER (1) GRANTING IN PART MOTION TO APPOINT FUTURE CARE DAMAGES EXPERT, AND (2) DENYING MOTION TO APPOINT ECONOMIST**[1]

On February 9, 2015, Christine DeLozier, as parent and next friend of L.T., a minor, filed a petition seeking compensation under the National Vaccine and Injury Compensation Program (the "Vaccine Program").[2] (ECF No. 1) ("Petition"). Ms. DeLozier alleged that L.T. suffered from alopecia areata ("AA") attributable to a hepatitis B vaccine ("HBV vaccine") L.T. received on November 6, 2012.

After a 2019 entitlement hearing, I ruled partially in favor of Petitioner, finding that she had established only that the HBV vaccine had caused a single instance of AA—not the underlying condition itself, and therefore not any subsequent outbreaks, none of which had been demonstrated to be the product of the first instance of hair loss. I thereafter awarded damages in the total sum of

---

[1] This Order will be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Order will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Order will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

$50,000.00, reflective of actual pain and suffering; Petitioner requested no other damages associated with treatment of the single instance of AA at issue.

Petitioner appealed my damages determination and was successful, with the Court of Federal Claims determining that in fact *every* subsequent AA occurrence L.T. experienced (or might experience) post-vaccination was equally attributable to the single HBV vaccine she received in 2012, given that the underlying condition was known to be chronic. *DeLozier v. Sec'y of Health & Hum. Servs.*, -- Fed. Cl. --, 2021 WL 1651406 (2021). I thereafter issued an Order instructing Petitioner to prepare and provide Respondent with a revised damages demand reflecting (a) costs associated with treatment of AA recurrences not covered by my initial damages decision, (b) costs of future care for L.T.'s condition, and (c) additional pain and suffering commensurate with the expanded nature of Petitioner's injury as outlined by the Court's Remand Order. Damages Order, dated Feb. 5, 2021 (ECF No. 87). In addition, because this matter is close to six years old, I urged the parties to address the issue as expeditiously as possible. *Id.* at 2.

The same day as my Order, Petitioner filed a motion seeking leave to retain a life care planner ("LCP") who could opine to the future costs Petitioner is likely to incur in treating her AA. *See generally* Motion, dated Feb. 5, 2021 (ECF No. 88) ("First Mot."). The one-page motion provided no argument as to why an LCP was warranted in this case.

Respondent filed his opposition to Petitioner's motion on February 10, 2021. Response, filed on Feb. 10, 2021 (ECF No. 89) ("First Resp."). Respondent argued that an LCP was unnecessary in this case because expenses associated with past AA occurrences "should already be known" to Petitioner, and future costs could easily and fairly be estimated based on that kind of evidence. Respondent also noted that in other cases involving vaccine-induced hair loss, the majority of awarded damages consisted of pain and suffering awards, with treatment costs making up a significantly smaller proportion of the awards. First Resp. at 1 (citing *Waterman v. Sec'y of Health & Hum. Servs.*, No. 13-44V, 2016 WL 3247581, at *1 (Fed. Cl. Spec. Mstr. May 12, 2016)). Respondent did not, however, point to published decisions so establishing (which I have previously noted do not exist), and instead referenced only his own internal records from proffered or settled cases. Overall, Respondent maintained that the scope of this case did not justify the cost or time that an LCP would entail. First Resp. at 2.

Before I could rule on Petitioner's first motion, Petitioner filed a *second* motion on February 16, 2021, seeking leave to appoint another expert—this time, an economist who could calculate the reduction of L.T.'s future pain and suffering sum to net present value. Motion, dated Feb. 16, 2021 (ECF No. 90) ("Second Mot.") at 2. Petitioner also took advantage of the opportunity the Second Motion provided to offer the argument missing from the First Motion for why an LCP was warranted. *Id.* at 1–2. Thus, she referenced exhibits from the underlying entitlement phase of the matter, noting that both L.T.'s treater as well as Petitioner's causation expert had made comments establishing the serious nature of her condition—that some of her hair loss was purportedly already permanent, and that she was proving resistant to treatment. *Id.* at 1.

2

Respondent filed another response in opposition to Petitioner's Second Motion. Response, filed Feb. 17, 2021 (ECF No. 90) ("Second Resp."). Respondent renewed his arguments against the appointment of an LCP—again advocating for less time consuming and burdensome means of obtaining the relevant damages information. *Id.* at 1–2. Regarding Petitioner's request to hire an economist, Respondent pointed out that Petitioner is already seeking the maximum $250,000.00 damages award for pain and suffering, thus potentially rendering moot the need to reduce to present value any future pain and suffering component. *Id.* at 2.

## ANALYSIS

Whether Ms. DeLozier should be permitted to retain the experts her motions request presents a question reserved to a special master's discretion. The Vaccine Rules empower special masters to evaluate and manage the scope of evidence-gathering (including what is done to calculate damages) in any case before them as part of their control over discovery generally (which is explicitly *not* a matter of right). *See* Vaccine Rules 7(a) and Rule 3(b)(1)–(2) (special master authority over conduct of proceedings includes "taking such evidence *as may be appropriate*" and "endeavoring to make the proceedings *expeditious, flexible, and less adversarial*, while at the same time affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision") (emphasis added). Such guidelines are comparable to those governing discovery procedures in the United States Court of Federal Claims, with their emphasis on avoiding discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." CFCR 26(b)(2)(C)(i).

Approval of a damages expert also flows from the broad discretion afforded special masters in determining whether costs incurred in the prosecution of a claim were reasonable. Section 15(e)(1)(A)–(B); *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Indeed, special masters may reduce fees and costs awards *sua sponte*, apart from objections made by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208–09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs). And reasonableness determinations regarding an expert's requested fees are "subject to the same reasonableness standards as fees for attorneys." *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 145 (2009).

Program petitioners frequently rely upon expert testimony to prove causation, as was the case in the present matter—but the same is not true of damages calculations pertaining to actual or anticipated treatment costs. In the vast majority of cases, damages can be established by reference to documentation (e.g., doctors' bills, prescription receipts, wage slips or W-2 forms) or any other evidence showing an incurred cost for the vaccine-related injury, future needs, or suffering

associated with the injury. Treating physicians familiar with the nature of a petitioner's injury may also be able to weigh in on the future treatments a vaccine-caused condition will likely require. *See, e.g.*, *McErlean v. Sec'y of Health & Hum. Servs.*, No. 13-543V, 2016 WL 5390167, at *2 (Fed. Cl. Spec. Mstr. Sept. 2, 2016) (denying a petitioner's motion for reconsideration after the special master declined to award costs relating to the retention of a life care planner).

An LCP, by contrast, is a specialized kind of expert best reserved for particularly complex and difficult damages cases involving truly life-altering, all-encompassing injuries impacting every aspect of the injured vaccinee's life. Because LCPs are expensive and can take a great deal of time to finalize a report (since they often must travel to visit with the injured party), they are not appropriate in less complex cases. *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1361 (Fed. Cir. 2000); *McErlean* 2016 WL 5390167, at *1–2 (cases involving transient injuries, scarring, or focal injuries are often limited in the scope of damages and thus do not require life care plans).

Petitioner's First Motion does not establish sufficient grounds for appointment of an LCP in this case (and that remains the case even if I consider the arguments made in the Second Motion—arguments that should have been included in the first). First, I do not find it likely that calculation of damages in this case presents the complex issues that a more severe and intractable injury (say, a person whose vaccine-induced disabilities require both extensive future treatment as well as home modifications), would involve, and which would require expert assistance to comprehend. Indeed—it is telling that Petitioner previously asked for no out-of-pocket damages for the two-year AA occurrence that I agreed was likely vaccine-caused.[3] This strongly suggests that most of the other compensable treatment costs incurred to date are likely to be mostly covered by insurance, or are *de minimis*. This component of damages needs no LCP to be calculated.

Second, Petitioner has not demonstrated than an LCP is required in this case to help calculate L.T.'s *future* treatment costs. Respondent has also accurately pointed out that damages awarded in prior alopecia injury cases do not suggest that determining future treatment costs is particularly difficult. *See* Second Resp. at 2. Petitioner should readily be able to ascertain such future costs through discussions with L.T.'s treating dermatologists, who are knowledgeable of L.T.'s condition and anticipated needs, can identify and predict the nature and frequency of those needs, and can likely provide reasonable and fair estimates of associated costs given their area of expertise.

Despite the above, I anticipate some reasonable costs associated with obtaining the assistance of treaters who can knowledgeably propose the kinds of treatments Petitioner will likely incur for L.T. To that end, Petitioner may retain a treater/expert who can assist her in formulating her overall damages demand, and I will reimburse the cost of that treater's time. But she may not

---

[3] *See* Petitioner's Brief in Support of Damages, filed May 22, 2020 (ECF No. 72), at 1.

retain an independent, professional LCP to provide her counsel with a detailed report setting forth damages components. Counsel is experienced enough in the Program to do this work himself.

Finally, I deny Petitioner's Second Motion in its entirety. As is the case with LCPs, economists are not required in every damages case—even where the calculation at issue involves some math. *Sabella*, 86 Fed. Cl. at 222 (affirming the special master's decision to no compensate a successful petitioner for the work of an expert who prepared an economic analysis of petitioner's lost earning capacity). Here, Petitioner has not demonstrated that this kind of expert assistance will prove necessary. Because pain and suffering is statutorily capped at $250,000.00 in the Vaccine Program (Section 15(a)(4)), and because Petitioner has already indicated her intent to seek an award at the cap (Second Mot. at 2), it is not a given that an economist's input will be needed to "reach" it. I might well find that actual pain and suffering to date exceeds the cap—and thus be able to award it without any consideration of future pain and suffering.

In addition, even if I determine that pain and suffering awarded in this case should include a future component, the process for reducing it to net present value is not inherently difficult. Rather, the only semi-thorny issue posed by net present value calculations is the proper formula to be applied. But special masters are routinely tasked with making damages determinations accounting for future pain and suffering, and there are many decisions in which they propose the proper formula to be used in doing so. *See, e.g.*, *Dillenbeck v. Sec'y of Health & Hum. Servs.*, No. 17-428V, 2019 WL 4072069, at *15 (Fed. Cl. Spec. Mstr. July 29, 2019), *aff'd in rel. part*, 147 Fed. Cl. 131 (2020). Counsel for Petitioner (who I again note has many years of Vaccine Program experience) is sufficiently versed in determining damages to read such cases and then offer an argument as to what formula should be used.

I remind Petitioner of my prior admonition that because of the case's age, coupled with my estimation that calculation of damages should not prove a herculean task, I intend damages to be resolved *in this calendar year.* Counsel should make good use of the time provided to complete their assessments, and to resolve those damages components that are not in dispute. Future requests for extensions of time to act will be poorly received.

## CONCLUSION

Petitioner's First Motion is GRANTED IN PART. Petitioner may not at this time retain a life care planner, but she may retain a treater to assist her in calculating L.T.'s future care needs, and the expense of that assistance (assuming it is otherwise reasonable) will be reimbursed.

Petitioner's Second Motion is DENIED.

Petitioner's deadline to make demand on Respondent, and certify that she has done so, is now extended to **April 30, 2021**. The parties shall thereafter file joint status reports describing

their progress in resolving this matter on **May 28, 2021**, and **June 30, 2021**. I shall thereafter set a briefing schedule for determining damages if the parties have not resolved the matter themselves by the latter date.

    **IT IS SO ORDERED.**

<u>/s/ Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master