# In the United States Court of Federal Claims

No. 15-124V

(Filed: June 24, 2021)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| CHRISTINE DeLOZIER, parent and next friend of L.T., a minor, | |
| Petitioner, | National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 et seq.; Remand; Clarification; Chronic Condition; Recurrence; Damages Expert; Life Care Plan; Full and Fair Opportunity to Present Vaccine Act Case. |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Richard Gage, Richard Gage, P.C., 1815 Pebrican Avenue, P.O. Box 1223, Cheyenne, WY 82003, for Petitioner.

Brian M. Boynton, C. Salvatore D'Alessio, Heather L. Pearlman, Alexis B. Babcock, Julia M. Collison, Jennifer L. Reynaud, United States Department of Justice, Civil Division, Torts Branch, P.O. Box 146, Benjamin Franklin Station, Washington, D.C. 20044, for Respondent.

---

**ORDER CLARIFYING REMAND INSTRUCTIONS**

---

**WILLIAMS**, Senior Judge.

This matter comes before the Court in an unusual posture as the Court remanded the matter to the Chief Special Master for further proceedings on damages, and those proceedings have not yet been completed. Because on remand the Chief Special Master prohibited Petitioner's counsel from retaining a life care planner, Petitioner contends that she cannot submit a reasoned damages demand and asks this Court to instruct the Chief Special Master to permit her to retain this type of expert. Although Respondent characterizes this request as an improper interlocutory appeal of the

---

[1] Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its decision under seal to provide the parties an opportunity to submit redactions. The parties did not propose any redactions. Accordingly, the Court publishes this decision.

Chief Special Master's ruling, this Court views Petitioner's motion as a request for clarification of its remand order.

In its remand order, this Court found that the Chief Special Master, after determining that the vaccine caused L.T.'s chronic alopecia areata ("AA"), erred by requiring Petitioner to demonstrate causation for each recurring AA episode and denying compensation for all future AA episodes. The Court remanded this matter "for a reassessment of damages that takes into account L.T.'s recurring episodes of AA," and directed the Chief Special Master to "reopen the evidentiary record on remand and determine appropriate compensation for subsequent and future recurrences of L.T.'s AA." ECF No. 92 at 2, 14.

The Chief Special Master permitted Petitioner to "retain a treater/expert who can assist her in formulating her overall damages demand," and stated that he would "reimburse the cost of that treater's time." ECF No. 93 at 4. However, the Chief Special Master ruled that Petitioner "may not retain an independent, professional [life care planner] to provide her counsel with a detailed report setting forth damages components." Id. at 4-5. The Chief Special Master stated that "[c]ounsel is experienced enough in the Program to do this work himself" and elaborated:

> [A life care planner] is a specialized kind of expert best reserved for particularly complex and difficult damages cases involving truly life-altering, all-encompassing injuries impacting every aspect of the injured vaccinee's life. Because LCPs are expensive and can take a great deal of time to finalize a report (since they often must travel to visit with the injured party), they are not appropriate in less complex cases. Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357, 1361 (Fed. Cir. 2000); McErlean 2016 WL 5390167, at *1-*2 [(Fed. Cl. Spec. Mstr. Sept. 2, 2016)] (cases involving transient injuries, scarring, or focal injuries are often limited in the scope of damages and thus do not require life care plans).

> Petitioner's First Motion does not establish sufficient grounds for appointment of an LCP in this case (and that remains the case even if I consider the arguments made in the Second Motion—arguments that should have been included in the first). First, I do not find it likely that calculation of damages in this case presents the complex issues that a more severe and intractable injury (say, a person whose vaccine-induced disabilities require both extensive future treatment as well as home modifications), would involve, and which would require expert assistance to comprehend. Indeed—it is telling that Petitioner previously asked for no out-of-pocket damages for the two-year AA occurrence that I agreed was likely vaccine-caused. This strongly suggests that most of the other compensable treatment costs incurred to date are likely to be mostly covered by insurance, or are de minimis. This component of damages needs no LCP to be calculated.

> Second, Petitioner has not demonstrated that an LCP is required in this case to help calculate L.T.'s future treatment costs. Respondent has also accurately pointed out that damages awarded in prior alopecia injury cases do not suggest that determining future treatment costs is particularly difficult. See Second Resp. at 2. Petitioner should readily be able to ascertain such future costs through discussions with L.T.'s treating dermatologists, who are knowledgeable of L.T.'s condition and anticipated needs, can identify and predict the nature and frequency of those needs, and can

likely provide reasonable and fair estimates of associated costs given their area of expertise.

Id. at 4 (footnote omitted).

In preventing Petitioner from retaining the type of expert her counsel deemed appropriate, the Chief Special Master misconstrued this Court's directive to "reopen the evidentiary record on remand and determine appropriate compensation for subsequent and future recurrences of L.T.'s AA." ECF No. 92 at 14. Retaining a life care planner is one reasonable method of proving such future damages. As such, this Court clarifies its remand order to permit Petitioner to retain a damages expert qualified to opine on future damages.

Vaccine Rule 3(b) sets forth the duties of Special Master:

The special master is responsible for:

(1) conducting all proceedings, including taking such evidence as may be appropriate, making the requisite findings of fact and conclusions of law, preparing a decision, and determining the amount of compensation, if any, to be awarded; and
(2) endeavoring to make the proceedings expeditious, flexible, and less adversarial, while at the same time <u>affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision</u>.

RCFC App. B, Rule 3(b) (emphasis added).

In refusing to allow Petitioner to retain a damages expert of her choice, the Chief Special Master ran afoul of the fundamental requirement of Vaccine Rule 3(b) that he "afford[] each party a <u>full and fair</u> opportunity to present its case." Id. (emphasis added). Petitioner's counsel maintains that Petitioner cannot provide a principled damages demand or "adequately make a record under the current orders of the chief special master." ECF No. 98 at 4; Apr. 7, 2021 Tr. at 12-13. Without a life care planner, Petitioner's counsel contends that he will be left "guessing on what the insurance offsets might be to not only the cost of treatment and drug care," but over the course of L.T.'s life. Apr. 7, 2021 Tr. at 13. Petitioner's counsel submits that a "life care planner would, in fact, be more efficient" here because counsel is not equipped to do the job of a life care planner and "bills at a much higher hourly rate than a life care planner and doctors bill at an even higher rate." ECF No. 94 at 3. Petitioner's counsel further posits that "just because the chief special master states in an order that a treating doctor should undertake life care planning work in a Vaccine Program case, does not mean that the doctor is going to choose to do so." Id.

Petitioner's counsel's disinclination to rely on treating physicians to prove damages for such future costs is understandable as their qualifications and expertise lie in the medical realm, not predicting future costs. A life care planner, on the other hand, is capable of assessing future damages for ongoing needs such as recurring hair loss. As the special master recognized in <u>Manis v. Secretary of Health & Human Services</u>:

> In order to assess damages in a case where there are ongoing needs, someone has to investigate and prepare the projected costs of those needs. In this case, a high

3

> medical insurance deductible would be part of that equation. Certainly, a seasoned life care planner, having the information at his or her ready disposal, can examine a petitioner's anticipated needs more quickly and expeditiously than an attorney who would need to do extensive research and who is generally billing at a much higher rate.

No. 13-732V, 2016 WL 4437959, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2016). The use of life care planners is appropriate where a claimant has established she has suffered a chronic injury which will likely require future treatment. See, e.g., Ballance v. Wal-Mart Stores, Inc., 178 F.3d 1282 (4th Cir. 1999) (unpublished table decision) ("Life care plans are often used in litigation to determine the cost of long-term care."); SGS-92-X003 v. United States, 118 Fed. Cl. 492, 513-14, 530 (2014) (accepting plaintiff's expert's life care plan in determining the cost of medical treatment for multiple sclerosis over the plaintiff's lifetime); Anthony v. Sec'y of Health & Hum. Servs., No. 14-680V, 2016 WL 7733084, at *15 (Fed. Cl. Spec. Mstr. Dec. 15, 2016) (reimbursing the cost of a life care planner where petitioner developed a vaccine-related chronic shoulder injury); Jenerou v. Sec'y of Health & Hum. Servs., No. 11-173V, 2012 WL 4762218, at *1-2 (Fed. Cl. Spec. Mstr. Sept. 11, 2012) (adopting the parties' joint life care plan in determining compensation for petitioner's vaccine-caused regional and chronic pain syndrome).

In implementing this Court's remand order, the Chief Special Master suggested that concerns of cost and delay supported disallowing the life care planner -- he noted that life care planners are "expensive and can take a great deal of time to finalize a report." ECF No. 93 at 4. Both of these valid concerns can, however, be addressed in less draconian ways than prohibiting Petitioner outright from retaining an expert she deems necessary to prove damages. If the Chief Special Master reasonably determines that the retention of a life care planner was unnecessary or excessively costly, that determination can be taken into account in resolving Petitioner's fee request. See Manis, 2016 WL 4437959, at *3 and Ware v. Sec'y of Health & Hum. Servs., No. 15-1410V, 2018 WL 5304149, at *3 (Fed. Cl. Spec. Mstr. Sept. 25, 2018) (reducing the cost of life care plans by 50% where the special masters found the hours expended to be excessive).[2]

As for the Chief Special Master's concern that retaining a life care planner could unduly delay proceedings, he has discretion to schedule proceedings and impose reasonable deadlines for expert reports. See Simanski v. Sec'y of Health & Hum. Servs., 671 F.3d 1368, 1381 n.2 (Fed. Cir. 2012) (affirming a special master's ability to set the deadline by which an expert report must be filed).

In sum, the Chief Special Master's ruling that Petitioner could not retain a damages expert of her choice failed to provide Petitioner a full and fair opportunity to present her case on damages. Prohibiting Petitioner from retaining a life care planner did not comport with this Court's remand order.

---

[2] This Court makes no finding at this juncture regarding the reimbursability of a life care planner as any such determination would be premature.

**Conclusion**

Upon consideration of "Petitioner's Motion for Order on Life Care Planner Expert," this Court construes the motion as a request to clarify its remand order and grants in part Petitioner's motion.

The Court clarifies its remand order as follows: The Chief Special Master is directed to reopen the evidentiary record on remand and permit the parties to submit additional evidence on damages and retain relevant damages experts, such as life care planners, to render opinions on appropriate compensation for subsequent and future recurrences of L.T.'s AA.

Petitioner's request for "an order appointing a new special master to determine damages" is denied.[3]  ECF No. 94 at 1.

                                                s/ Mary Ellen Coster Williams
                                                **MARY ELLEN COSTER WILLIAMS**
                                                **Senior Judge**

---

[3]     See RCFC App. B, Rule 3(d).