# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: August 22, 2022

* * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| CHRISTINE DeLOZIER, | * |  |
| *parent and next friend of L.T., a minor,* | * | UNPUBLISHED |
|  | * |  |
| Petitioner, | * | No. 15-124V |
|  | * |  |
| v. | * | Special Master Dorsey |
|  | * |  |
| SECRETARY OF HEALTH | * | Damages Award; Hepatitis B Vaccine; |
| AND HUMAN SERVICES, | * | Alopecia Areata. |
|  | * |  |
| Respondent. | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * *

<u>Richard Gage</u>, Richard Gage, P.C., Cheyenne, WY, for Petitioner.
<u>Julia Marter Collison</u>, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On February 9, 2015, Christine DeLozier[2] ("Petitioner"), as parent and next friend of L.T., a minor, filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 <u>et seq.</u> (2012).[3]  Petitioner alleged that L.T. suffered from alopecia areata as the result of a hepatitis B vaccination

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] During pendency of this case, Petitioner changed her last name from Torres to DeLozier, and therefore the case caption was amended.  Order dated Feb. 1, 2019 (ECF No. 58).

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

administered on November 6, 2012.  Petition at 1 (ECF No. 1).  On December 10, 2019, a ruling on entitlement issued, finding Petitioner entitled to compensation.  Ruling on Entitlement dated Dec. 10, 2019 (ECF No. 66).  The Chief Special Master found L.T. was entitled to compensation associated with the first occurrence of alopecia areata, but not for any subsequent occurrence of alopecia areata after August 2015.  Id. at 2, 24.  A damages decision issued on August 11, 2020, awarding Petitioner $50,000.00 in actual pain and suffering.  Damages Decision dated Aug. 11, 2020 (ECF No. 75).

Thereafter, Petitioner filed a motion for review, which was granted by Senior Judge Mary Ellen Coster Williams, and remanded to the Chief Special Master to determine appropriate compensation for subsequent and future recurrences of L.T.'s alopecia areata.  Opinion and Remand Order ("Remand Order") dated Feb. 19, 2021 (ECF No. 92).  Specifically, "[t]he Chief Special Master [was] directed to reopen the evidentiary record on remand and permit the parties to submit additional evidence on damages and retain relevant damages experts, such as life care planners, to render opinions on appropriate compensation for subsequent and future recurrences of L.T.'s [alopecia areata]."  Order Clarifying Remand Instructions ("Order Clarifying Remand") dated June 24, 2021 (ECF No. 110).

A damages hearing was held on June 23, 2022.  After the undersigned's Bench Rulings during the hearing, the only item that remained in dispute was Petitioner's actual and future pain and suffering award.  Ruling Awarding Pain & Suffering dated Aug. 1, 2022, at 2 (ECF No. 170).  On August 1, 2022, the undersigned issued a ruling awarding pain and suffering, finding that in addition to the award of $50,000.00, Petitioner is entitled to receive an additional award in the amount of $70,000.00 (to reflect 2015 to present) for actual pain and suffering for a total of $120,000.00, and an award for future pain and suffering in the amount of $10,000.00 per year, reduced to net present value, for L.T.'s remaining life expectancy or until the statutory cap of $250,000.00 is met.  Id.

On August 22, 2022, Respondent filed a joint status report in response to the undersigned's ruling awarding pain and suffering ("Joint Status Rept."), attached hereto as Appendix A.  Respondent submitted the Joint Status Report providing a statement of all damages, including those that the parties have agreed upon as well as those decided by the undersigned, in the manner that the parties agree upon.  Joint Status Rept. at 1.  In the joint status report, Respondent represented that Petitioner does not object to the representations made.  Id. Based on the record as a whole, the undersigned finds that Petitioner is entitled to an award as stated in the Joint Status Report.

Pursuant to the terms stated in the attached Joint Status Report, the undersigned awards Petitioner:

**(1)     A lump sum payment of $257,153.97, representing compensation for life care expenses (including health insurance premiums and maximum out of pocket, topical Tofacitinib ointment, National Alopecia Areata Annual Meeting, Alopecia Areata Support Group/Group Therapy, and mileage expenses awarded by the Special Master) expected to be incurred during the first year after judgment ($14,603.20), and pain and suffering ($242,550.77), in the**

form of a check payable to Petitioner, as guardian(s)/ conservator(s) of the estate of L.T., for the benefit of L.T.

(2)     A lump sum payment of $1,953.34, representing compensation for satisfaction of the Monroe County Department of Social Services Medicaid lien, payable jointly to Petitioner and:

> Monroe County Department of Social Services
> ATTN: Susan G. Fittos
> Resource Recovery Technician
> 39 West Main Street, Room 307
> Rochester, New York 14614
> Member ID: ES90155M

(3)     An amount sufficient to purchase an annuity contract described in Section II.C. of the Joint Status Report.

Joint Status Rept. at 3-6.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** herewith.[4]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

|  |  |  |
|---|---|---|
| CHRISTINE DeLOZIER, parent and next friend of L.T., a minor, | ) ) ) ) | |
| Petitioner, | ) ) | No. 15-124V |
| v. | ) ) | Special Master Dorsey ECF |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) | |
| Respondent. | ) ) ) | |

## RESPONDENT'S JOINT STATUS REPORT IN RESPONSE TO RULING AWARDING PAIN AND SUFFERING DAMAGES (ECF NO. 170)

In the Special Master's August 1, 2022 Ruling Awarding Pain and Suffering Damages ("Ruling"), the Special Master noted that "the parties are to file a joint status report by Wednesday, August 31, 2022, (1) converting the undersigned's award of future pain and suffering to its net present value, and (2) providing a statement of all damages in the manner that the parties agree as the parties proposed in their July 18, 2022 joint status report."

Respondent submits this Joint Status Report providing the Special Master with a statement of all damages, including those that the parties have agreed upon as well as those decided by the Special Master, in the manner that the parties agree contains the information needed for the Special Master's damages decision.

While preserving his right, pursuant to 42 U.S.C. § 300aa-12(3), to seek review of the Special Master's June 23, 2022 Bench Ruling and August 1, 2022 Ruling (ECF No. 170), respondent submits the following joint status report regarding damages. Petitioner's counsel has reviewed this joint status report and does not object to the representations made herein.

## I.     Items of Compensation

### A.     Life Care Items

Respondent engaged life care planner Linda Curtis, RN, MS, CNLCP, CCM, CNLCP, and petitioner engaged Elizabeth Kattman, MS, Rehabilitation Counselor and Laura Woodard, M.A., Rehabilitation Counselor, to provide an estimation of L.T.'s future vaccine-injury-related needs.  Life care plans were filed in this case.  Agreed-upon life care items, as well as life care items delineated as awarded by the Special Master, are illustrated by the chart entitled "Appendix A: Items of Compensation for L.T.," attached to this Joint Status Report as Tab A.[1]

### B.     Lost Future Earnings

No loss of earnings was requested or awarded.

### C.     Pain and Suffering

The parties agreed that based upon the evidence of record, L.T. is entitled to an award for pain and suffering under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(4).  However, the parties did not agree on an overall award or the allocation to actual versus projected pain and suffering.  On August 1, 2022, the Special Master awarded L.T. $120,000.00 for actual pain and suffering and "$10,000.00 per year reduced to net present value, for the rest of her life or until the statutory cap

---

[1] The chart at Tab A illustrates the parties' agreed-upon annual amounts for life care items and, pursuant to the Special Master's June 23, 2022 Bench Ruling and August 1, 2022 Ruling, includes the Special Master's award of the following life care items: health insurance premiums and maximum out of pocket expenses from the date of judgment through compensation year 2034; topical Tofacitinib ointment expenses from the date of judgment through the remainder of L.T.'s life; National Alopecia Areata Annual Meeting expenses from the date of judgment through the remainder of L.T.'s life; Alopecia Areata Support Group/Group Therapy expenses from the date of judgment through compensation year 2028; individual therapy expenses from compensation year 2029 through the remainder of L.T.'s life;  mileage expenses from the date of judgment through the remainder of L.T.'s life.  Annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

of $250,000.00 is met." Ruling dated August 1, 2022, at 14 (ECF No. 170).  Applying the

Court's guidance on the award for projected pain and suffering, the parties agree that the amount

to be awarded for L.T.'s projected pain and suffering is $122,550.77.  This results in a total

award for pain and suffering of $242,550.77.  *See* 42 U.S.C. § 300aa-15(a)(4).

     D.    <u>Medicaid Lien</u>

The parties agree that L.T. should be awarded funds to satisfy a Monroe County, New

York Department of Social Services Medicaid lien in the amount of $1,953.34, which represents

full satisfaction of any right of subrogation, assignment, claim, lien, or cause of action the

Monroe County Department of Social Services may have against any individual as a result of

any Medicaid payments Monroe County Department of Social Services has made to or on behalf

of L.T., from the date of her eligibility for benefits through the date of judgment in this case as a

result of her vaccine-related injury suffered on or about November 6, 2012, under Title XIX of

the Social Security Act.

## II.    Form of the Award

The parties request that the compensation provided to petitioner be made through a

combination of a lump sum payment and future annuity payments as described below, and

request that the Special Master's Decision on Damages and the Court's judgment award the

following[2]:

    A.  A lump sum payment of $257,153.97, representing compensation for life care

---

[2] Should L.T. die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief.  In particular, respondent would oppose any award for future medical expenses and future pain and suffering.

expenses (including health insurance premiums and maximum out of pocket, topical Tofacitinib

ointment, National Alopecia Areata Annual Meeting, Alopecia Areata Support Group/Group

Therapy, and mileage expenses awarded by the Special Master) expected to be incurred during

the first year after judgment ($14,603.20), and pain and suffering ($242,550.77), in the form of a

check payable to petitioner as guardian(s)/ conservator(s) of the estate of L.T., for the benefit of

L.T.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/

conservator(s) of the estate of L.T., any such payment shall be made to the party or parties

appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate

of L.T. upon submission of written documentation of such appointment to the Secretary.

B.  A lump sum payment of $1,953.34, representing compensation for satisfaction of the

Monroe County Department of Social Services Medicaid lien, payable jointly to petitioner and:

> Monroe County Department of Social Services
> ATTN: Susan G. Fittos
> Resource Recovery Technician
> 39 West Main Street, Room 307
> Rochester, New York 14614
> Member ID: ES90155M

Petitioner agrees to endorse this payment to the Monroe County Department of Social Services.

C.  An amount sufficient to purchase an annuity contract,[3] subject to the conditions

described below, that will provide payments for the life care items contained in the life care plan,

as illustrated by the chart at Tab A, attached hereto, paid to the life insurance company[4] from

---

[3]  In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

[4]  The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve.  The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

> a.  A.M. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;

which the annuity will be purchased.[5]  Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through respondent's purchase of an annuity, which annuity shall make payments directly to petitioner,[6] as guardian(s)/conservator(s) of L.T., only so long as L.T. is alive at the time a particular payment is due.  At the Secretary's sole discretion, the periodic payments may be provided to petitioner in monthly, quarterly, annual, or other installments.  The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioner and do not require that the payment be made in one annual installment.

1.   Growth Rate

The parties agree that a four percent (4%) growth rate should be applied to all non-medical life care items, and a five percent (5%) growth rate should be applied to all medical life care items.  Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity payments should grow as follows: four percent (4%) compounded annually from the date of judgment for non-medical items, and five percent (5%) compounded annually from the date of judgment for medical items.

---

b.  Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;

c.  Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;

d.  Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating:  AA-, AA, AA+, or AAA.

[5] Petitioner authorizes the disclosure of certain documents filed by the petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

[6] Once L.T. reaches the age of majority, future payments will be made directly to her.

2.      Life-contingent annuity

Petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as L.T. is alive at the time that a particular payment is due.  Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of L.T.'s death.

3.      Guardianship

No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of L.T.'s estate.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/ conservator(s) of the estate of L.T., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of L.T. upon submission of written documentation of such appointment to the Secretary.

**III.    Summary of Recommended Payments Following Judgment**

A.      Lump Sum paid to the court-appointed guardian(s)/ conservator(s) of the estate of L.T. for the benefit of L.T.:   **$257,153.97**

B.      Medicaid lien:                                         **$   1,953.34**

C.      An amount sufficient to purchase the annuity contract described above in section II. C.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Acting Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

ALEXIS B. BABCOCK
Assistant Director
Torts Branch, Civil Division

s/*Julia M. Collison*
JULIA M. COLLISON, ESQ.
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 305-0102

DATED:  August 22, 2022

**Appendix A:  Items of Compensation for Delozier (I.T.)**                    Page 1 of 1

| ITEMS OF COMPENSATION | G.R. | * | M | Lump Sum Compensation Year 1 2022 | Compensation Years 2-7 2023-2028 | Compensation Year 8 2029 | Compensation Years 9-13 2030-2034 | Compensation Year 14 2035 | Compensation Years 15-52 2036-2073 | Compensation Year 53 2074 | Compensation Years 54-Life 2075-Life |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance | 5% | | M | 9,092.76 | 9,092.76 | 9,092.76 | 9,092.76 | | | | |
| Medicare Part B Deductible | 5% | | | | | | | | | 233.00 | 233.00 |
| Dermatology | 5% | * | | 70.00 | 70.00 | 70.00 | 70.00 | 300.00 | 300.00 | 60.00 | 60.00 |
| Tofacitinib | 5% | | | 320.00 | 320.00 | 320.00 | 320.00 | 320.00 | 320.00 | 320.00 | 320.00 |
| Clobetasol Solution | 5% | | | 20.00 | 20.00 | 20.00 | 20.00 | 676.00 | 676.00 | 676.00 | 676.00 |
| Lab Testing | 5% | * | | 35.00 | 14.00 | 14.00 | 14.00 | 330.00 | 132.00 | | |
| Alopecia Areata Conference Travel Expenses | 4% | | | 3,090.00 | 1,545.00 | 1,545.00 | 1,545.00 | 1,545.00 | 1,545.00 | 1,545.00 | 1,545.00 |
| Alopecia Areata Support Group | 4% | | M | 1,920.00 | 1,920.00 | | | | | | |
| Indiv Therapy | 4% | * | | | | 165.00 | 60.00 | 1,400.00 | 560.00 | 280.00 | 112.00 |
| Mileage:  Group Therapy | 4% | | | 52.80 | 52.80 | | | | | | |
| Mileage:  Indiv Therapy | 4% | | | | | 11.00 | 4.40 | 4.40 | 4.40 | 4.40 | 4.40 |
| Mileage:  Dermatology | 4% | | | 2.64 | 2.64 | 2.64 | 2.64 | 2.64 | 2.64 | 2.64 | 2.64 |
| Pain and Suffering | | | | 242,550.77 | | | | | | | |
| Medicaid Lien | | | | 1,953.34 | | | | | | | |
| Annual Totals | | | | 259,107.31 | 13,037.20 | 11,240.40 | 11,128.80 | 4,578.04 | 3,540.04 | 3,121.04 | 2,953.04 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to the court-appointed guardian(s)/
conservators(s) of the estate of L.T. for the benefit of L.T. for pain and suffering ($242,550.77), and
Year 1 life care expenses ($14,603.20): $257,153.97.
As soon as practicable after entry of judgment, respondent shall make the following payment jointly to petitioner and
the Monroe County Department of Social Services, as reimbursement of the county's Medicaid lien: $1,953.34.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated in column "G.R." above, compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in 12 monthly installments at the discretion of respondent.